1  Richard A. Wright (Nev. Bar No. 0886)
   Margaret M. Stanish (Nev. Bar No. 4057)
2  WRIGHT, STANISH & WINCKLER
   300 South Fourth Street, Suite 701
3  Las Vegas, Nevada 89101
   Tel: (702) 382-4004
4
   Jay W. Eisenhofer
5  Keith M. Fleischman
   John C. Kairis
6  GRANT & EISENHOFER P.A.
   485 Lexington Avenue, 29th Floor
7  New York, NY 10017
   Tel:  (646) 722-8500
8
   *Counsel for Lead Plaintiffs City of Tulsa Municipal*
9  *Employees' Retirement Plan and Oklahoma Firefighters*
   *Pension and Retirement System and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

|  |  |
|---|---|
| *In Re Shuffle Master, Inc. Securities Litigation* | No. 2:07-cv-00715-KJD-RJJ |
|  | CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY CLASS CERTIFICATION, PRELIMINARY**
**APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF FORM**
**AND MANNER  OF NOTICE, AND SETTING OF FINAL FAIRNESS HEARING**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ........................................................................................................1

II.   STATEMENT OF FACTS ...........................................................................................3

      A.    Lead Plaintiffs' Claims .......................................................................................3

      B.    The Action ............................................................................................................4

      C.    Mediation and the Proposed Settlement ............................................................5

ARUGMENT ......................................................................................................................6

I.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........................6

II.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS .......................7

      A.    The Prerequisites Of Rule 23(a) Are Satisfied ..................................................8

            1.    The Settlement Class Is Sufficiently Numerous .......................................8

            2.    There Are Common Questions Of Law And Fact ....................................9

            3.    The Class Representatives' Claims Are Typical Of  Those Of The
                  Settlement Class .........................................................................................10

            4.    Lead Plaintiffs And Class Counsel Will Fairly And Adequately Protect
                  The Interest Of The Class .........................................................................10

      B.    The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3) .......................11

            1.    Common Legal And Factual Questions Predominate...............................11

            2.    A Class Action Is Superior To Other Methods Of Adjudication............12

III.  THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE CLASS ARE
      SUFFICIENT .............................................................................................................13

IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
      SETTLEMENT BECAUSE IT IS WITHIN THE RANGE OF VALUE
      WARRANTING APPROVAL .....................................................................................16

CONCLUSION..................................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..................................................................7, 11, 12

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) ................................................................9

*Churchill Village L.L.C. v. General Electric, et al.,*
361 F.3d 566 (9th Cir. 2004) ..............................................................13

*In re Cirrus Logic Sec. Litig.,*
155 F.R.D. 654 (N.D. Cal. 1994)............................................................8

*City Partnership Co. v. Atlantic Acquisition L.P.,*
100 F.3d 1041 (1st Cir. 1996) ..............................................................17

*In re Community Bank of Northern Va.,*
418 F.3d 277 (3d Cir. 2005)...................................................................7

*Estate of Jim Garrison v. Warner Brothers et al,*
No. 95-cv-8328, 1996 WL 407849 (C.D.Cal. June 25, 1996)...............10

*Fidel v. Farley,*
534 F.3d 508 (6th Cir. 2008) ................................................................15

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995).....................................................................6

*In re Gilat Satellite Networks, Ltd.,*
No. 02-cv-1510, 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007) .......................16

*Harris v. Palm Springs Alpine Estates, Inc.,*
329 F.2d 909 (9th Cir. 1964) ..................................................................8

*In re Indep. Energy Holdings PLC Sec. Litig.,*
No. 00-cv-6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) .......................17

*Leppind v. Mukasey,*
530 F.3d 862 (9th Cir. 2008) ..................................................................6

*Linney v. Cellular Alaska Partnership,*
151 F.3d 1234 (9th Cir. 1998) ................................................................6

*In re Livent, Inc. Noteholders Sec. Litig.,*
210 F.R.D. 512 (S.D.N.Y. 2002) ...........................................................12

*Perez-Funez v. Dist. Dir. I.N.S.,*
611 F. Supp. 990 (C.D. Cal. 1984) .........................................................8

*In re Portal Software, Inc. Sec. Litig.,*
No. C-03-5138, 2007 WL 1991529 (N.D. Cal. June 30, 2007)................... passim

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  177 F.R.D. 216 (D.N.J. 1997)...................................................................................14

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) ................................................................................8

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)........................15

*In re Wireless Facilities, Inc. Sec. Litig. II* ,
  253 F.R.D. 607 (S.D. Cal. 2008) ....................................................................... passim

### RULES/ STATUTES

15 U.S.C. § 78u-4(a)(7) ...................................................................................................14

Fed. R. Civ. P. Rule 23(a).............................................................................................7, 8

Fed. R. Civ. P. Rule 23(a)(1) ..........................................................................................8

Fed. R. Civ. P. Rule 23(a)(2) ..........................................................................................9

Fed. R. Civ. P. Rule 23(a)(3) ........................................................................................10

Fed. R. Civ. P. Rule 23(a)(4) ........................................................................................10

Fed. R. Civ. P. Rule 23(b)................................................................................................7

Fed. R. Civ. P. Rule 23(b)(3) .....................................................................7, 11, 12, 13

Fed. R. Civ. P. Rule 23(c)(2)(B) ..............................................................................13, 14

Fed. R. Civ. P. Rule 23(e)(1) ........................................................................................13

### OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION § 21.632 ...........................................................16

## I.    INTRODUCTION

Lead Plaintiffs, City of Tulsa Municipal Employees Retirement Plan and the Oklahoma Firefighters Pension and Retirement System, on behalf of themselves and the Class (as defined herein), and through Class Counsel, Grant & Eisenhofer P.A., submit this application for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Action") with defendants Shuffle Master, Inc. ("Shuffle Master"), Mark Yoseloff ("Yoseloff") and Richard L. Baldwin ("Baldwin" and collectively with Shuffle Master and Yoseloff "Defendants").   The terms of the Settlement are set forth in the Class Action Stipulation of Settlement dated January 31, 2010 (the "Settlement Agreement") which is being filed concurrently with this motion.[1]   Under the Settlement, Defendants' directors' and officers' liability insurance carriers would pay $13,000,000 (thirteen million dollars) in cash to the Class (inclusive of attorneys' fees), in return for complete and unconditional releases and discharges of Defendants from all of the Released Claims, as defined in the Settlement Agreement.

Lead Plaintiffs respectfully submit that preliminary approval of the Settlement is appropriate.   The Settlement was achieved after a mediation in August 2009, conducted by the Honorable Layn R. Phillips (Ret.), and is the result of good faith, arm's-length negotiations among experienced securities counsel for Lead Plaintiffs and Defendants.   Because the parties did not agree on the terms of a Settlement until after the Court's decision on Defendants' motion to dismiss, the parties (and the Court) are fully conversant with the strengths and weaknesses of this Action.   Moreover, at the time of Settlement, Lead Plaintiffs had conducted extensive investigation that included discussions with confidential witnesses and extensive work with accounting experts and consultants.   The parties had also begun conducting discovery that included a review of a substantial number of Shuffle Master documents, including an investigative report conducted by a Shuffle Master special committee into certain matters alleged in the Complaint.   Accordingly, the parties are well-positioned to evaluate the risks of continued

---

[1]  Unless otherwise specified, defined terms used in this memorandum of law shall have the same meaning as ascribed to the terms in the Settlement Agreement.  The Settlement Agreement is attached to the Notice of Motion that is being filed contemporaneously herewith.

litigation against the fairness and prudence of the Settlement, and each of the parties believes the Settlement produces an excellent result for the Class.  For these reasons, which are set forth more fully below, the Settlement meets the test for preliminary approval in that it is fair, reasonable and adequate.

Lead Plaintiffs therefore request that the Court enter an Order, in the form of the accompanying proposed Preliminary Approval Order: (1) preliminarily certifying the Class; (2) granting preliminary approval of the proposed Settlement; (3) approving the proposed form and method of giving notice ("Notice") to the Class of the pendency of this litigation and of the Settlement; (4) directing that Notice be given to the putative Class members as approved by the Court; and (5) scheduling a fairness hearing during which the Court will consider, among other things, (a) the parties' request for final approval of the Settlement, the Plan of Allocation, and entry of the proposed Final Order and Judgment, (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, (c) dismissal of the Action pending before the Court, and (d) any other matters properly before the Court.

If the Court grants preliminary approval to the Settlement, Lead Plaintiffs respectfully propose the following schedule for the settlement consideration and approval process:

- Mailing of individual Notices and Proof of Claim forms to all Settlement Class Members who can be identified through reasonable effort within *ten (10) business days of entry of the Preliminary Approval Order (the "Notice Date")*.

- Publication of Summary Notice in *Investor's Business Daily* and transmission of the Summary Notice over the National Circuit of *Business Wire* within *ten (10) days of the Notice Date*.

- Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, or motions for fees and expenses: *fourteen (14) days before the date of the Fairness Hearing*.

- Fairness Hearing: *At the Court's convenience, but no fewer than sixty (60) days after the date the Notice Date*.

- Deadline for filing motions for Final Approval of Class Action Settlement And for Attorneys' Fees and Reimbursement of Expenses: *seven (7) days prior to the Fairness Hearing*.

- Postmark deadline for submission of Proofs of Claim: *thirty (30) days after the Fairness Hearing*.

## II.     STATEMENT OF FACTS

### A.     Lead Plaintiffs' Claims

This is a securities fraud class action brought by Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities who purchased or otherwise acquired Shuffle Master common stock between and including February 1, 2006 and March 12, 2007 (the "Class Period"), and who were damaged thereby.  Lead Plaintiffs assert claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and against Yoseloff (at all relevant times the Chairman and Chief Executive Officer of Shuffle Master), and Baldwin (at all relevant times the Chief Financial Officer, Chief Accounting Officer and Senior Vice President of Shuffle Master), under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Defendants have denied, and continue to deny, these allegations.

As alleged in the Consolidated Class Action Complaint dated February 5, 2008 (the "Complaint"), Shuffle Master is a gaming company specializing in providing casinos with products to improve their profitability, such as automatic card shufflers, intelligent table systems, roulette chip sorters, and entertainment products such as table games designed to expand their casino clients' gaming entertainment content.  Lead Plaintiffs alleged that during the Class Period, Shuffle Master engaged in improper fraudulent accounting in connection with its financial statements, by improperly recognizing revenue from intercompany inventory transfers as well as other improper accounting practices.  Lead Plaintiffs alleged that this improper accounting falsely and artificially inflated Shuffle Master's fourth quarter 2006 earnings by nearly 50% and its full year 2006 earnings by over 30%.  Lead Plaintiffs also alleged that Shuffle Master mislead the investing public as to the measures purportedly taken to improve Shuffle Master's internal accounting controls after Shuffle Master had acknowledged an internal control weakness in connection with a restatement of its financial statements a year earlier.  In addition, Lead Plaintiffs alleged that Defendants made misrepresentations to the investing public

1   concerning the success of Shuffle Master's acquisition and integration of an Australian gaming

2   company called Stargames.  Defendants denied all of these claims.

3       **B.      The Action**

4       In June 2007, a number of plaintiffs filed putative securities class action lawsuits against

5   Shuffle Master.  By order dated November 30, 2007, this Court consolidated those actions into

6   the present Action, appointed Lead Plaintiffs to represent the putative class under the Private

7   Securities Litigation Reform Act, and appointed Lead Plaintiffs' counsel, the law firm of Grant

8   & Eisenhofer P.A., to serve as Class Counsel for the putative class.

9       On February 5, 2008, after an extensive investigation that included review of numerous

10   public filings and financial statements, discussions with confidential witnesses, and extensive

11   consultation with accounting and financial experts, Lead Plaintiffs filed the Complaint.  On

12   March 25, 2008, Defendants moved to dismiss the Complaint under Rule 9(b) of the Federal

13   Rules of Civil Procedure, contending that the Complaint failed to allege specific facts giving rise

14   to a strong inference of scienter.  Defendants also claimed that the alleged misstatements

15   concerning Shuffle Master's acquisition of Stargames were protected as forward-looking

16   statements.  On March 23, 2009, after full briefing on Defendants' motion, the Court ruled that

17   "Plaintiffs' evidence of Defendants' improper accounting procedures and misrepresentations

18   regarding the weakness of Shuffle Master's internal controls create a strong inference of scienter

19   on behalf of Defendants."  Order at 17, Mar. 23, 2009.  However, the Court also ruled that

20   "Plaintiffs' allegation of scienter in relation to the acquisition of Stargames fails independently"

21   and therefore an analysis of whether the Stargames-related statements were protected as forward-

22   looking was unnecessary.  *Id*. at 9, 9 n.1.  On April 29, 2009, Defendants filed an answer to the

23   Complaint.

24       On May 28, 2009, the parties submitted to the Court a Proposed Scheduling Order and

25   Discovery Plan, which, among other things, provided for written discovery to be served

26   immediately after each party's initial disclosures, and provided fixed dates for completion of fact

27   discovery, expert discovery, dispositive motions, class certification briefing, and submission of a

28   joint pre-trial order.  The discovery plan also contained, as an attachment, a negotiated

Stipulation and Protective Order to govern the production and inspection of confidential material.  The parties then began exchanging discovery and serving subpoenas seeking relevant documents from third parties.  In June 2009, the parties first began to discuss the possibility of settlement.  On July 1, 2009, Defendants produced, and Class Counsel reviewed, substantial Shuffle Master documents.

### C.    Mediation and the Proposed Settlement

On  August 4, 2009, during the course of discovery, the parties conducted a mediation in an effort to resolve the Action.  The Honorable Layn R. Phillips (Ret.), former United States District Court Judge, served as the mediator.  While the mediation session itself did not produce a settlement agreement, the parties kept the lines of communication open and, with Judge Phillips' able assistance, were ultimately able to come to an agreement-in-principle on a settlement.  The terms of that settlement were later formalized in the Settlement Agreement.

Under the Settlement, Defendants' insurance carriers shall pay $13,000,000 to the Class in consideration for the Class providing the Defendants with a complete and unconditional release and discharge from the Released Claims (as defined in the Settlement Agreement).  The $13,000,000 shall be deposited into an escrow account for the benefit of the Class no later than ten business days after entry of an order preliminarily approving the settlement.  (Settlement Agreement ¶ 2.1).  The Settlement Agreement provides that, at or before the final approval hearing, Class Counsel will propose to the Court a Plan of Allocation which shall provide for the manner of allocation of the Settlement Fund among all authorized claimants.  (Settlement Agreement ¶ 4.7).

The Settlement Agreement and its supporting papers provide for the form and manner of providing Notice to the Class, the proof of claim procedures, the procedures for seeking exclusion from the Class or objecting to any terms of the Settlement, and the procedure by which Class Counsel shall apply for attorneys' fees and reimbursement of expenses incurred in prosecuting this Action.  Final approval of the Settlement will result in the dismissal with prejudice of the Action in its entirety, against all Defendants.

## ARGUMENT

### I.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Public policy highly favors settlement as a means of resolving disputes.  *See Leppind v. Mukasey,* 530 F.3d 862, 863 (9th Cir. 2008) (there is a "strong judicial policy that favors settlements of disputes") (*quoting Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 939 (9th Cir. 2007).  This policy is particularly strong in complex class action litigation, where settlement can minimize substantial litigation expenses on both sides and conserve judicial resources.  *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998) (refusing to disturb approval of class action settlement "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned") (*quoting Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (*citing Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982);  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *citing* 2 Newberg & Conte, Newberg on Class Actions § 11.41.

The approval of a proposed class action settlement "is generally a two-step process."  *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).  As one court in this Circuit has explained:

> At the preliminary approval stage, the court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  Fed. Judicial Ctr., Manual for Complex Litigation, § 21.633 (4th ed. 2004).  The court then approves the form and manner of notice and sets a final fairness hearing, where it will make a final determination on the fairness of the class settlement.  *See id.*

*In re Wireless Facilities*, 253 F.R.D. at 610; *see also In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138, 2007 WL 1991529 (N.D. Cal. June 30, 2007) (preliminarily approving securities class action settlement upon two-part inquiry of whether proposed class satisfied Rule 23 and whether proposed settlement should be preliminarily approved).  As explained in detail below, the Settlement is an excellent result for the Class particularly compared to the risk that further

1  protracted and contested litigation might lead to no recovery, or a smaller recovery, against the

2  Defendants.  Moreover, the Settlement has no obvious deficiencies as it does not improperly

3  grant preferential treatment to the Lead Plaintiffs or any Class member, and it falls within the

4  range of possible approval.  Accordingly, the Court should preliminarily approve the Settlement,

5  certify the Class and approve the proposed Notices.

6  **II.  THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS**

7      The proposed Class consists of all persons and entities that purchased or otherwise

8  acquired Shuffle Master's publicly traded common stock during the Class Period from February

9  1, 2006 through and including March 12, 2007.  The Class excludes the Defendants, the officers,

10  directors and partners of Shuffle Master, members of the Defendants' immediate families and

11  their legal representatives, heirs, successors and assigns, and any entity in which any of the

12  foregoing have or had a controlling interest.  Also excluded from the Class are any putative Class

13  members who exclude themselves by filing a request for exclusion in accordance with the

14  requirements set forth in the Notice to be provided to the Class.

15      Courts have long acknowledged the propriety of class certification for purposes of a class

16  action settlement.  *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class

17  action before class certification and stipulate that a defined class be conditionally certified for

18  settlement purposes") (*citing Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)); *see also In re*

19  *Community Bank of Northern Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("'all Federal Circuits

20  recognize the utility of Rule 23(b)(3) settlement classes' as a means to facilitate the settlement of

21  complex nationwide class actions") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618

22  (1997)).  Like any other class certification decision, certification of a class for settlement

23  purposes requires a determination that the requirements of Rule 23 are met.  *In re Wireless*

24  *Facilities*, 253 F.R.D. at 610.  Specifically, a class action must meet each of the four

25  requirements set forth in Rule 23(a), and at least one of three requirements set forth in Rule

26  23(b).  *See* Fed. R. Civ. P. 23(b).  Class certification is appropriate here because the Action

27  easily meets the requirements of Rule 23(a) and Rule 23(b)(3).

28

### A.     The Prerequisites Of Rule 23(a) Are Satisfied

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### 1.     The Settlement Class Is Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  The Ninth Circuit has stated that "impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."'  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  In fact, classes with as few as twenty-five members have been found large enough for certification.  *See, e.g., In re Cirrus Logic Sec. Litig.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994); *Perez-Funez v. Dist. Dir. I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).  The exact size of the class need not be known, so long as logic dictates that the class is large.  *See Cirrus Logic*, 155 F.R.D. at 656; *Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.") (citations omitted).

Throughout the Class Period, Shuffle Master's common stock was actively traded on NASDAQ.  While the exact number of Class members is unknown, Shuffle Master's 2006 public filings reveal that the average number of shares of common stock outstanding during 2006 (the calendar year that encompasses all but ten weeks of the Class Period) was approximately 34.9 million.  During the Class Period of February 1, 2006 through and including March 12, 2007, the average daily trading volume for Shuffle Master common stock was greater than 892,000 shares.  Based on the foregoing, it is reasonable to presume that the Class consists of thousands of geographically dispersed members, and thus the joinder of all members would be impracticable.

*See, e.g., In re Portal Software*, 2007 WL 1991529, at *3 (finding numerosity for purposes of preliminary settlement approval where plaintiffs estimated that proposed class had "thousands" of members); *In re Wireless Facilities,* 253 F.R.D. at 611 (finding numerosity for purposes of preliminary settlement approval where stock was traded on NASDAQ and potential class members were in the thousands)  Accordingly, the Class is sufficiently numerous to satisfy Rule 23(a)(1).

**2.      There Are Common Questions Of Law And Fact**

Federal securities cases like this one easily meet the commonality requirement of Rule 23(a)(2) because the claims of all Class members arise from the same course of conduct by the Defendants and involve the same legal theories.  To satisfy Rule 23(a)(2), "the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *In re Portal Software*, 2007 WL 1991529, at *3, *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Further, specific facts may vary among individual class members as long as the named plaintiff's claims are based on the same legal theory as the other members.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Here, Lead Plaintiffs' claims against the Defendants present many questions of law and fact which are common to all members of the Class, including:

- Whether the Defendants participated in and pursued the course of conduct described in the Complaint;

- Whether the Defendants' alleged misrepresentations and omissions were material;

- Whether the Defendants' conduct violated Sections 10(b) and/or 20(a) of the Exchange Act;

- To what extent the Class members have sustained damages that were caused by the Defendants' violations of the securities laws; and

- The proper measure of the damages sustained by members of the Class.

Thus, the Rule 23(a)(2) commonality requirement is satisfied.

### 3.   The Class Representatives' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Portal Software*, 2007 WL 1991529, at *3 (*citing Hanon v. Data Products*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation omitted), *Estate of Jim Garrison v. Warner Brothers et al*, No. 95-cv-8328, 1996 WL 407849, at *2 (C.D. Cal. June 25, 1996) ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants").

Here, the injuries to Lead Plaintiffs and the members of the Class are attributable to the same alleged course of conduct by the Defendants, and liability for this conduct is predicated on the same legal theories.  Lead Plaintiffs, like the other Class members were they to proceed individually, would have to prove, among other things, that Defendants deceived the investing public by artificially inflating and maintaining the price of Shuffle Master stock and caused Class members to purchase at the inflated prices.  As such, the Rule 23(a)(3) typicality requirement is satisfied.  *See In re Wireless Facilities*, 253 F.R.D. at 611 (finding element of typicality where "[t]he proof Lead Plaintiff would need to establish its claims would also prove the claims of the proposed Settlement Class.").

### 4.   Lead Plaintiffs And Class Counsel Will Fairly And Adequately Protect The Interest Of The Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Wireless Facilities*, 253 F.R.D. at 611 (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Here, Lead Plaintiffs and Class Counsel have no conflicts of interest with other Class members because Lead Plaintiffs' claims are typical of those of other Class members. *See In re Wireless Facilities*, 253 F.R.D. at 611-12 ("Here, it does not appear that Lead Plaintiff and its counsel have any conflicts of interest with other class members because the claims of Lead Plaintiff are typical of the proposed Settlement Class."). In addition, Lead Plaintiffs and Class Counsel have been prosecuting the Action vigorously on behalf of the Class. Lead Plaintiffs and the Class share the common goal of maximizing recovery, and there is no conflict between them. Class Counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and is qualified and able to conduct this litigation – as they have demonstrated in drafting the Complaint, defeating the Defendants' motion to dismiss, and negotiating the Settlement. Rule 23(a)(4) is therefore satisfied.

### B.   The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency." *In re Portal Software*, 2007 WL 1991529, at \*4 (*citing* Fed. R. Civ. P. 23(b)(3) advisory committee notes). These requirements are easily met in this case.

#### 1.   Common Legal And Factual Questions Predominate

The common questions necessary to satisfy Rule 23(b)(3) "'need not be dispositive of the litigation.'" *In re Portal Software*, 2007 WL 1991529, at \*5 (*quoting Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006)). Instead, the Court must determine whether any issues "'are subject to generalized proof [or] applicable to the class as a whole" and conversely whether any issues "must be the subject of proof on behalf of individualized class members.'" *Id.* Since "no precise test can determine whether common issues predominate" the Court "must pragmatically assess the entire action and the issues involved." *Id.* The Rule 23(b)(3) test of predominance is "readily met" in securities fraud cases, such as this. *Amchem*

*Prods.*, 521 U.S. at 625.  Courts in securities cases "typically evince a greater willingness to certify classes involving individualized damages, as opposed to individualized liability issues." *In re Portal Software*, 2007 WL 1991529, at *5. (citations omitted); *see also In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (common issues predominate where "each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct [and] [t]he only individualized question concerns the amount of damages").

Here, all the Class members' claims against Defendants are based on the same alleged course of conduct by the Defendants.  There are numerous common issues relating to the Defendants' liability which predominate over any individualized issues, such as whether the Defendants violated the Exchange Act and if so whether those violations affected the price that Class members paid for Shuffle Master stock.  The predominance requirement of Rule 23(b)(3) is therefore satisfied.  *See In re Wireless Facilities*, 253 F.R.D. at 612 (finding that common issues predominate "because each class member purchased and/or acquired Wireless common stock during the Settlement Class Period at alleged artificially inflated prices"); *In re Portal Software*, 2007 WL 1991529, at *5 ("Here, the common questions concern whether defendants violated the Securities Act and, if so, whether such violations affected the price plaintiffs paid for Portal stock.") (*citing In re Emulex*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) (granting motion for class certification because "[t]he predominant questions of law or fact at issue in this case are the alleged misrepresentation defendants made during the class period and are common to the class") (citations omitted)).

### 2.    A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

1    Considering these factors, this class action is clearly "superior to other available methods

2    for the fair and efficient adjudication" of the claims of the vast number of purchasers of Shuffle

3    Master stock.  Indeed, courts in this Circuit have concluded that the class action device in

4    securities cases is usually the superior method by which to redress injuries to a large number of

5    individual plaintiffs.  *In re Wireless Facilities*, 253 F.R.D. at 612 ("This Court finds that class

6    resolution of this action is superior to other available methods of adjudication of the controversy

7    because the claims of many individuals will be effectively resolved at one time, eliminating the

8    possibility of repetitious litigation that would waste the parties' and the Court's resources.").

9    The scope and complexity of Lead Plaintiffs' claims against Defendants, together with

10   the massive cost of individualized litigation, make it unlikely that the vast majority of the Class

11   members would be able to seek relief without class certification.  Moreover, it is clearly

12   desirable to concentrate the claims of all Class members in this forum, and Lead Plaintiffs do not

13   foresee any difficulties in the management and settlement of this action as a class action.

14   Accordingly, the requirements of Rule 23(b)(3) are satisfied, and the Court should preliminarily

15   certify this action as a class action on behalf of the proposed Class.

16   ## III.    THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE CLASS ARE SUFFICIENT

17   In order to afford class members the opportunity to object to a proposed class-wide

18   settlement, reasonable notice must be provided to those class members.  Notice is satisfactory if

19   it "generally describes the terms of the settlement in sufficient detail to alert those with adverse

20   viewpoints to investigate and to come forward and be heard."  *Churchill Village L.L.C. v.*

21   *General Electric, et al.*, 361 F.3d 566, 575 (9th Cir. 2004) (*quoting Mendoza v. Tuscon Sch. Dist.*

22   *No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).  Where a proposed settlement is coupled with a

23   request for class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure, class

24   notice must meet the requirements of both Rules 23(c)(2) and 23(e).

25   In terms of the form and manner of providing notice, Rule 23(e)(1) instructs courts to

26   "direct notice in a reasonable manner to all class members who would be bound by the

27   proposal," while Rule 23(c)(2)(B) requires the notice to be the "best notice that is practicable

28   under the circumstances, including individual notice to all members who can be identified

through reasonable effort." Rule 23 "does not require the parties to exhaust every conceivable method of identifying the individual class members," and therefore for class members "whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997).

The content of a class notice in a securities class action is governed by Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 23(c)(2)(B) requires that the notice:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The PSLRA requires disclosure of the following additional information:

- The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;

- If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged, a statement from each settling party concerning the issue or issues on which the parties disagree;

- A statement indicating which parties or counsel intend to apply for an award of fees or costs from the settlement fund, as well as the amount to be requested (including on an average per share basis) and a brief explanation supporting the fees and costs sought;

- The name and contact information of representatives of plaintiffs' counsel who will be reasonably available to answer class members' questions; and

- The reasons for the settlement.

*See* 15 U.S.C. § 78u-4(a)(7).

In the present case, both the form and the content of the proposed Notice to the Class are sufficient and should be approved by the Court.

*First*, Lead Plaintiffs have submitted two forms of notice to the Court for approval: a long-form Notice ("Class Notice") and a Summary Publication Notice ("Summary Notice")

14

attached as Exhibits 1 and 3, respectively, to the proposed Preliminary Approval Order.  Lead Plaintiffs have agreed to publish the Summary Notice in *Investor's Business Daily* and cause it to be transmitted over the National Circuit of Business Wire, to send the Class Notice by first-class mail to those members of the Class whose addresses can be identified through reasonable effort, and to post the Class Notice on the claims administrator's website.  These are all well-established means of providing legally sufficient notice in securities class actions.  *See, e.g., In re Wireless Facilities,* 253 F.R.D. at 613 (notice program was adequate where it involved mailing to stockholders who could be identified with reasonable effort, plus publication of a summary notice in *Investor's Business Daily*); *Fidel v. Farley*, 534 F.3d 508, 514-15 (6th Cir. 2008) (notice program "comported with the requirements of both due process and Rule 23(c)(2)(B)" where notice was mailed to brokerage houses and summary notice was published in *Investor's Business Daily* and on the internet); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) (same).

*Second*, the Notice provides detailed descriptions of the Action, the Settlement, the Class, and the options available to potential Class members, including the right to object or opt out.  *See* Exhibit 1 to the proposed Preliminary Approval Order.  The Summary Notice provides similar information in a summary form, and informs the reader how to obtain a copy of the more detailed Notice.  *See* Exhibit 3 to the Preliminary Approval Order.  With respect to the PSLRA's requirements, the Notice: (1) states the aggregate and per share amounts that are estimated to be distributed to the Class; (2) describes the parties' areas of disagreement with respect to the Class's recoverable damages; (3) states that Class Counsel will request attorneys' fees and reimbursement of litigation expenses and the basis for the request; (4) identifies representatives of Class Counsel who can be contacted for additional information; and (5) explains the reasons for the Settlement.

Accordingly, Lead Plaintiffs respectfully request that this Court approve the form and content of the proposed Class Notice and Summary Notice.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT BECAUSE IT IS WITHIN THE RANGE OF VALUE WARRANTING APPROVAL

At the preliminary approval stage, the Court is not required to undertake an in-depth consideration of the relevant factors for final approval.  Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."  MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004).  If a proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Portal Software*, 2007 WL 1991529, at *5 (*quoting* Manual for Complex Litigation, § 30.44 (2d ed. 1985)); *see also In re Gilat Satellite Networks, Ltd.,* No. 02-cv-1510, 2007 U.S. Dist. LEXIS 29062, at *31 (E.D.N.Y. Apr. 19, 2007) ("Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval") (citing Manual for Complex Litigation § 30.41).  Applying the approach set forth above, the Court should preliminarily approve the Settlement because it is sufficiently fair, reasonable and adequate and thus falls squarely within the range of possible approval.

*First*, the Settlement amount of $13,000,000 represents a fair and reasonable result after more than two years of litigation.  During this time, each side vigorously advocated its positions, as described above.  The Settlement amount of $13,000,000 reflects, among other things, the evidence Lead Plaintiffs believe they had developed against Defendants and, at the same time, recognizes the inherent risks, costs and potential for delay associated with a complex securities litigation, including the meaningful possibility that Defendants would be unable to pay a substantial judgment if Lead Plaintiffs were to prevail in the litigation.  *See In re Portal Software*, 2007 WL 1991529, at *6 (preliminarily approving class action securities settlement of

1   $3,250,000 as '"within the range of possible approval"' based on "risk of summary judgment . . .

2   and the anticipated expense and complexity of further litigation").

3         *Second*, as set forth above, the proposed Settlement is the result of intensive arm's-length

4   negotiation between the parties, following a mediation conducted by a respected former judge

5   with significant experience mediating complex class actions, including actions asserting

6   securities claims.  These factors – the time and effort spent on the settlement negotiations, and

7   the presence of a highly-regarded mediator – all militate in favor of preliminary approval of the

8   Settlement because they strongly indicate that there was no collusion in the result the parties

9   achieved.  *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Settlements that follow sufficient

10  discovery and genuine arms-length negotiation are presumed fair.") (*citing Nat'l Rural*

11  *Telecomms. Coop. v. Directv, Inc.*, No. 99-cv-5666, 2003 U.S. Dist. LEXIS 2537, at *13 (C.D.

12  Cal. Jan. 5, 2004)); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-cv-6689, 2003

13  U.S. Dist. LEXIS 17090, at *13 (S.D.N.Y. Sept. 26, 2003) ("[T]he fact that the Settlement was

14  reached after exhaustive arm's-length negotiations, with the assistance of a private mediator

15  experienced in complex litigation, is further proof that it is fair and reasonable").

16        *Third*, the parties agreed to the terms of the Settlement after extensive investigation by

17  Lead Plaintiffs, and after conducting several months of discovery, during which time Class

18  Counsel reviewed substantial Shuffle Master documents.  There is a presumption in favor of a

19  proposed settlement when the parties have conducted sufficient discovery to allow them to

20  investigate the pertinent factual and legal issues and to assess the merits of their respective cases.

21  *See, e.g., City Partnership Co. v. Atlantic Acquisition L.P.*, 100 F.3d 1041 (1st Cir. 1996).  In this

22  case, Class Counsel researched the claims against Defendants for many months prior to filing the

23  Complaint, and reviewed numerous public filings containing detailed financial statements.  After

24  the Court denied Defendants' motion to dismiss, the parties exchanged written initial disclosures,

25  propounded and responded to various requests for documents and interrogatories, and served

26  subpoenas on various third parties seeking additional relevant documents.  As a result of all of

27  these efforts, Lead Plaintiffs were able to develop the facts concerning Defendants' potential

28

1  liability, and the parties and their counsel were able to make detailed mediation presentations

2  followed by a well-informed decision regarding the Settlement.

3       *Fourth*, the parties are represented by counsel experienced in securities class action

4  litigation.  Class Counsel has extensive experience and expertise in complex securities litigation

5  and class action proceedings throughout the United States.  Counsel for Defendants similarly has

6  extensive expertise from a long track record in securities class actions and has vigorously

7  defended Defendants throughout the course of the litigation.

8       For all of these reasons, Lead Plaintiffs respectfully request that the Court preliminarily

9  approve the Settlement.  *See In re Wireless Facilities*, 253 F.R.D. at 612 (preliminarily

10  approving securities class action settlement of $4,500,000 as "fair, adequate and reasonable"

11  where experienced class action attorneys negotiated arms-length agreement that achieved a

12  "positive result for the potential class members"); *In re Portal Software*, 2007 WL 1991529, at

13  *6 (preliminarily approving securities class action settlement of $3,250,000 where "the court

14  cannot say that the proposed settlement is obviously deficient or is not 'within the range of

15  possible approval'") (citation omitted).

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully requests that the Court enter an order in the form of the proposed Preliminary Approval Order accompanying this motion: (1) preliminarily approving the proposed Settlement as within the range of possible fairness, reasonableness and adequacy; (2) preliminarily certifying the Class for purposes of the Settlement; (3) approving the form and manner of the proposed Summary Notice and Notice; and (4) setting a date and time for the hearing regarding final approval of the Settlement, Plan of Allocation, and Class Counsel's application for attorneys' fees.

Dated: February 2, 2010                                    Respectfully submitted,

s/ Keith M. Fleischman
GRANT & EISENHOFER P.A.
Jay W. Eisenhofer
Keith M. Fleischman
John C. Kairis
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel:  (646) 722-8500

Richard A. Wright (Nev. Bar No. 0886)
Margaret M. Stanish (Nev. Bar No. 4057)
WRIGHT, STANISH & WINCKLER
300 South Fourth Street, Suite 701
Las Vegas, Nevada 89101
Tel: (702) 382-4004

*Class Counsel and Local Counsel for Lead Plaintiffs City of Tulsa Municipal Employees' Retirement Plan and Oklahoma Firefighters Pension and Retirement System and the Proposed Class*